**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

---

Dingxi Longhai Dairy, Ltd.,

     A China Company incorporated in
     the Province of Gansu, China,


          Plaintiff,

    vs.


Becwood Technology Group L.L.C.,

     A U.S. Company incorporated in
     the State of Minnesota, USA,

        Defendant.

Case Type: Other Contract
Court File No. 08-cv-762(DSD/SRN)



**MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION
and
IN OPPOSITION TO DEFENDANT'S
MOTION FOR ENTRY OF
FINAL JUDGMENT**

---

**HILL RIVKINS & HAYDEN LLP**

and

**LAW OFFICES OF DELIN QU**

Attorneys for Plaintiff
Dingxi Longhai Dairy Ltd.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iv

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

LITIGATION ..................................................................................................................... 7

ARGUMENT

    POINT I ......................................................................................................................... 11

**THE COURT SHOULD RECONSIDER ITS JULY 1 ORDER
PURSUANT TO ITS BROAD DISCRETION UNDER Fed. R. Civ. P. 54(b)**

    A. Rule 54(b) Reconsideration Standard ......................................................... 11

    B. UN Convention on Contracts for the Int'l Sale of Goods ............................ 13

    C. Under the Rule 12(b)(6) Standard, Becwood Was Not
       Entitled to Avoid its Sales Contract with Longhai ..................................... 13

        1. *Becwood Did Not Invoke Article 73* ..................................................... 15

        2. *Becwood Has Not Established Nonconformity*
           *of the Goods* ........................................................................................ 16

        3. *Becwood Was Not Entitled to Release of the*
           *Third Shipment without Payment* .......................................................... 19

    D. Return Shipping and Related Costs are Recoverable
       Under Article 76 ......................................................................................... 20

    E. Newly Discovered and Previously Unavailable Evidence
       Demonstrates Resale of the Returned Inulin ............................................... 23

POINT II ................................................................................................................ 26

**THE COURT SHOULD DENY BECWOOD'S MOTION
FOR ENTRY OF FINAL JUDGMENT**

    A. Rule 54(b) Certification Standard ................................................................ 26

    B. Becwood's Res Judicata Argument Has Been Rendered
       Moot and Entry of Final Judgment Would Be Improper
       in Any Event ............................................................................................... 27

    C. Res Judicata is Not a Primary Concern and Otherwise
       Weighs in Favor of Longhai's Opposition ................................................. 28

    D. Becwood Has Not Demonstrated Clear Injustice or
       Hardship Resulting from Delay .................................................................. 30

    E. Judicial Administrative Interests Do Not Favor Certification ................... 33

        *1. The Relationship Between the Adjudicated
           and Unadjudicated Claims* ................................................................. 33

        *2. The Possibility That the Need for Review Might
           or Might Not Be Mooted by Future Developments
           in the District Court* ........................................................................... 34

        *3. The Possibility That the Reviewing Court Might Be
           Obliged to Consider the Same Issue a Second Time* ........................... 34

        *4. Miscellaneous Factors Such as Delay, Economic
           Considerations, and Expenses* ............................................................. 35

CONCLUSION ..................................................................................................... 36

## TABLE OF AUTHORITIES

**TREATIES**

United Nations Convention on Contracts for the Int'l Sale of Goods,
     Apr. 11, 1980, S. Treaty Doc. No. 98-9 (1983),
       19 I.L.M. 671 (1983), *reprinted at* 15 U.S.C. Appendix ....................Passim

**STATUTES**

Minn. Stat. § 336.2-710 (2008) ............................................................................ 22

**CASES**

*Bank of Lincolnwood v. Fed. Leasing, Inc.*,
     622 F.2d 944 (7th Cir. 1980)...................................................................... 29

*Bellisio Foods, Inc. v. Prodo Pak Corp.*,
     07-CV-4520, 2008 WL 4867352 (D. Minn. Nov. 4, 2008) ........................ 17

*BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador,*
     332 F.3d 333 (5th Cir. 2003)...................................................................... 13

*Burlington N. R.R. Co. v. Bair,*
     754 F.2d 799 (8th Cir. 1985)..................................................................27-28

*Chicago Prime Packers, Inc. v. Northam Food Trading Co.,*
     320 F.Supp.2d 702 (N.D. Ill. 2004),
     *aff'd,* 408 F.3d 894 (7th Cir. 2005) ..................................................... 13, 18

*Cobell v. Norton,*
     355 F.Supp.2d 531 (D.D.C. 2005) ............................................................ 12

*Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.,*
     819 F.2d 1519 (9th Cir. 1987) ................................................................... 29

*Curtiss-Wright v. Gen. Elec. Co.,*
     446 U.S. 1 (1980) ........................................................................26-27, 33

*Delchi Carrier SpA v. Rotorex Corp.,*
     71 F.3d 1024 (2d Cir. 1995) ................................................................. 13, 21

*Effron v. Sun Line Cruises, Inc.,*
    67 F.3d 7 (2d Cir. 1995) ............................................................................ 31

*Farr Mann & Co. v. M/V Rozita,*
    903 F.2d 871 (1st Cir. 1990) ...................................................................... 12

*Hafley v. Lohman,*
    90 F.3d 264 (8th Cir. 1996) ........................................................... 15, 20, 23

*Hagerman v. Yukon Energy Corp.,*
    839 F.2d 407 (8th Cir. 1988) ........................................................... 12, 20, 23

*Hayden v. McDonald,*
    719 F.2d 266 (8th Cir. 1983) .................................................................. 26, 34

*In re Charter Commc'ns, Inc.,*
    443 F.3d 987 (8th Cir. 2006) ......................................................... 11, 20, 25

*Interstate Power Co. v. Kan. City Power & Light Co.,*
    992 F.2d 804 (8th Cir. 1993) ...................................................................... 33

*Little Earth of United Tribes, Inc. v. U.S. Dep't of HUD,*
    738 F.2d 310 (8th Cir. 1984) ................................................................26-27, 33

*Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.,*
    259 F.Supp.2d 471 (M.D. La. 2002) ..................................................... 11, 12

*Lovett v. Gen. Motors Corp.,*
    975 F.2d 518 (8th Cir. 1992) ...................................................................... 11

*Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.,*
    930 F.Supp. 1317 (D. Minn. 1996) ............................................27-30, 33, 35

*Page v. Preisser,*
    585 F.2d 336 (8th Cir. 1978) ................................................................27-28

*Persistence Software, Inc. v. Object People, Inc.,*
    200 F.R.D. 626 (N.D. Cal. 2001) ............................................................... 12

*Rexam Inc. v. United Steel Workers of Am.,*
    03-2998, 2006 WL 2530384 (D. Minn. Aug. 31, 2006) ...................... 12, 20

*Schoen v. Washington Post,*
    246 F.2d 670 (D.C. Cir. 1957)(Burger, J.) ........................................... 12, 25

*Shamley v. ITT Corp.,*
    869 F.2d 167 (2d Cir. 1989) ....................................................................... 29

*St. Paul Guardian Ins. Co. v. Neuromed Med. Sys. & Support, GmbH,*
    00-CV-9344, 2002 WL 465312 (S.D.N.Y. Mar. 26, 2002) ....................... 19

*Transclean Corp. v. Bill Clark Oil Co.,*
    02-1138, 2004 WL 2730101 (D. Minn. Nov. 18, 2004) ............................ 33

*U.S. Fire Ins. Co. v. Smith Barney, Harris Upham & Co.,*
    724 F.2d 650 (8th Cir. 1983) ...................................................................... 33

*Wells' Dairy, Inc. v. Travelers Indem. Co. of Ill.,*
    336 F.Supp.2d 906 (N.D. Iowa 2004) ........................................................ 12

## RULES

Advisory Committee Notes to Fed. R. Civ. P. 60(b) .............................................. 12

Fed. R. Civ. P. 54(b) ............................................................................................ 11

## OTHER

Jan Ramberg, Int'l Chamber of Commerce,
    *ICC Guide to Incoterms 2000* (1999) .......................................................... 17

Ulrich Magnus,
    *The Remedy of Avoidance of Contract Under CISG – General Remarks*
    *and Special Cases*, 25 J.L. & Com. 423 (2006) ..................................... 14-15

## **INTRODUCTION**

Plaintiff Dingxi Longhai Dairy Co. Ltd. ("Longhai") submits this Memorandum of Law in support of its Cross-Motion for Reconsideration of the Court's July 1, 2008 Order ("July 1 Order") and in opposition to the Motion for Entry of Final Judgment filed by defendant Becwood Technology Group LLC ("Becwood") pursuant to Fed. R. Civ. P. 54(b).

First, the Court needs to reinstate Longhai's claims on the third and fourth shipments because: (a) Becwood could not have avoided its sales contract with Longhai under the UN Convention on Contracts for the International Sale of Goods ("CISG") when Plaintiff's allegations are taken as true; (b) return shipping and related expenses are recoverable as damages under article 76; and (c) newly discovered evidence, which could not have been presented through the exercise of due diligence during briefing for the July 1 Order, shows a resale of the improperly rejected goods, and therefore article 76 is not applicable.

Second, Defendant's Rule 54(b) motion must fail in any event because the related action in New York is in the process of being dismissed by Becwood's insurer and Rule 54(b) certifications should not be routinely granted. Despite numerous reassurances that Plaintiff had no aspiration of transferring this action to the Southern District of New York in order to "relitigate" the claims dismissed by the July 1 Order—and despite Magistrate Judge Nelson's explicit admonition to Becwood's counsel that such an approach would not even be possible—Defendant has resorted once again to mischaracterizing Plaintiff's intentions in an attempt to insinuate that Longhai's desire to consolidate *three* related

1

cases pending before *three* different judges is inappropriate.  Becwood nevertheless has failed to demonstrate the requisite danger of hardship or injustice through delay which would otherwise justify certification under Rule 54(b).

Accordingly, Longhai requests that the Court exercise its broad discretion and reconsider its July 1 Order, thereby also denying Becwood's Motion for Entry of Final Judgment.

## BACKGROUND

This case arises out of a February 2007 contract for the sale of organic Inulin (a dietary fiber extracted from Jerusalem artichokes and used as a sweetener in processed foods) between Longhai, a Chinese manufacturer, and Becwood, a Minnesota-based distributor, formerly known as Encore Technologies LLC.  Becwood agreed to purchase 612 metric tons of Inulin from Longhai, in four shipment installments, comprised of eight (8), four (4), eleven (11) and eleven (11) containers, respectively.  The terms of sale were FOB ("free on board") Port of Tianjin-Xingang, China, as confirmed by Longhai in response to Becwood's inquiries when the two companies first entered into negotiations in 2006.  (June 24, 2009 Declaration of Anthony J. Pruzinsky (hereinafter "Pruzinsky Decl.") Ex. 1.)  It was Becwood's intention to resell the Inulin to Stonyfield Farm, Inc. ("Stonyfield") for use in its yogurt products.  Additionally, at the time of the transaction, Becwood was insured under a policy issued by Hanover Insurance Co. ("Hanover").

On February 28, 2007, Becwood issued a purchase order to Longhai.  (Pruzinsky Decl. Ex. 2.)  In turn, Longhai invoiced Becwood on March 10, 2007, for 198MT of

2

Inulin, representing the first and second shipments of eight (8) and four (4) containers, respectively.  The purchase order required "full payment" to be made by Becwood by wire transfer while the goods were in transit after its receipt of the "shipping documents." By its additional terms, Becwood reserved the right to reject any shipment not meeting specifications, based on samples forwarded from Longhai, *after* testing by Medallion Labs, a Minneapolis-based company.  Longhai, however, could "request an additional third party U.S. based lab" to retest any rejected product.

On March 5, 2007, Becwood, as the FOB purchaser, informed Longhai that the Inulin shipments would travel via the Port of New York and nominated Evergreen Marine Corp. ("Evergreen") as carrier, as it had done previously for shipments from Longhai.  (Pruzinsky Decl. Exs. 3 - 4.)  However, on March 7, 2007, Stonyfield instructed Becwood to reroute one container to the West Coast (Los Angeles, CA) in order to hasten delivery.  (Pruzinsky Decl. Ex. 5.)  For its part, Becwood reminded Stonyfield that: (a) payment had to be made "promptly" so that Becwood could "get the release on the shipment before it arrives to the port;" and (b) "any shipment damage would not be known until after payment and [arrival]…." (Id.)

Thereafter, Longhai arranged for carriage on behalf of and pursuant to the instructions provided by Becwood, sending the initial eight-container shipment of 198MT of Inulin in good order and condition to the marine terminal at Tianjin-Xingang for shipment to the United States in shipping containers provided by Evergreen Marine Corporation, aboard a vessel operated by Evergreen or one of its affiliates (collectively referred to as "Evergreen").  As carrier, Evergreen issued four "to order" bills of lading

3

on March 16, 2007, for the first shipment of eight (8) containers.[1] (Pruzinsky Decl. Ex. 6.)   It then issued two bills on March 26, 2007 for the second shipment of four (4) containers, and eight bills for the third and fourth shipments of eleven (11) containers each on April 5 and 19, 2007, respectively.  (Id.)  Becwood wired payment to Longhai for the one (1) container rerouted to the West Coast and the seven (7) others that were shipped to the Port of New York in the first installment on April 11 and 13, 2007. (Pruzinsky Decl. Ex. 7.)   Upon receipt, Longhai negotiated and returned the fully endorsed bills of lading to the carrier with instructions to deliver the cargo to Becwood in New York as the "to order" consignee.  (Pruzinsky Decl. Ex. 8.)

On May 1, 2007, Stonyfield informed Becwood that payment for the second installment of four (4) containers would be "cut" on May 4 and would be received by Becwood on May 7.  (Pruzinsky Decl. Ex. 9.)  Shortly thereafter, Becwood contacted Longhai to request that the bills of lading for the second shipment be released *without* payment.  (Pruzinsky Decl. Ex. 10.)  As a gesture of good faith, Longhai agreed to release the bills after Becwood confirmed that payment would be made to Longhai on May 7.  (Id.)  Becwood's president, David Goulet, thanked Longhai for its decision, noting, "This is good it builds trust so we can work together long term."  (Pruzinsky Decl. Ex. 11.)  Longhai subsequently released the bills of lading without payment, thereby allowing Becwood to take delivery of the second shipment from Evergreen. (Pruzinsky Decl. Ex. 12.)

---

[1] One of the above-mentioned affiliates, Hatsu Marine Ltd, which has since been renamed Evergreen Marine (UK) Ltd., actually issued the relevant bills of lading.

On May 2, 2007, Stonyfield informed Becwood that it had "experienced some 'condensation' issues" with certain bags of Inulin that had arrived at its warehouse. (Pruzinsky Decl. Ex. 13.)  Mr. Goulet and personnel from Stonyfield then decided to partially reject the Inulin as non-conforming without reference to or verification from any testing done by Medallion Labs.  In doing so, Becwood failed to follow the agreed-upon terms and inspection mechanism specifically outlined in the February 28 purchase order, and thereby breached its contract with Longhai.  Yet, in an email to Longhai, dated May 9, 2007, Mr. Goulet admitted, "The issue is not that the product inside is bad as much as Stonyfield is not accepting wet packages with mold on them." (Pruzinsky Decl. Ex. 14.) Moreover, Becwood failed to analyze the substance on the packaging, which apparently was destroyed or disposed of by Becwood or Stonyfield.  Thus, it was never determined whether the packages had mold on them, nor will it ever be determined on account of the spoliation committed by Becwood or its customer.

Mr. Goulet also conveyed his fear that Stonyfield "will just run from the problem even though they have responsibility in this transaction as well," and acknowledged, "The bigger problem is [Stonyfield] agreed to pre pay these shipments so everyone gets paid, if they back out it leaves us with the problem of what to do with all of this product." (Id.)   Stonyfield, however, was not a party to the contract between Longhai and Becwood, which was not conditioned on Stonyfield's prepayment to Becwood. Nevertheless, Becwood indicated that if *Stonyfield* refused to take the product or wanted to inspect it first, then *Becwood* would insist upon release of the third shipment without following the terms of the sales contract.  (Id.)

5

Meanwhile, Longhai had already sent the third and fourth shipments of Inulin to the marine terminal at Tianjin-Xingang, once again in good order and condition, for shipment to Becwood.  Accordingly, on May 15, 2007, the third installment of eleven (11) containers arrived at the port of New York.  (Pruzinsky Decl. Ex. 15.)  Although it was not required to do so under the terms of the sales contract, Longhai informed Becwood that, in good faith and in keeping with its contractual right to demand retesting of any goods rejected by Medallion Labs, it would release this shipment for "inspection in [a] public warehouse" upon payment for the second installment of four containers that Becwood received but failed to pay for on May 7, 2007 despite its earlier reassurances. (Pruzinsky Decl. Ex. 16.)  Longhai further explained that, if the inspection showed that the goods were not damaged, Becwood or Stonyfield would have to remit full payment (in line with the FOB sales terms).  Conversely, if the bags showed signs of mold, Longhai agreed to wait for payment until Hanover covered the loss.  (Id.)  Becwood rejected this proposal and attempted with its insurer to secure the release of the third shipment without payment.  (Pruzinsky Decl. Ex. 17.)  On May 25, 2007, Longhai again reminded Becwood of the FOB sales terms and Plaintiff's compliance with the purchase order.  (Pruzinsky Decl. Ex. 18.)  Defendant, however, insisted on adding additional terms to the contract, noting that it had "purchased 8 bad containers" (i.e., the first shipment) and would not buy "another without inspection," in stark contravention of its purchase order's terms.  (Pruzinsky Decl. Ex. 19.)  By refusing to pay for and take delivery of the third shipment in accordance with the terms agreed upon by Plaintiff and Defendant alone, Becwood breached its FOB shipping contract with Longhai.  Plaintiff

thus was forced to recall the last two shipments to China, thereby incurring substantial shipping and related charges.

In early May 2007, Becwood submitted a claim to Hanover for purported mold damage to the first and second shipments. (Pruzinsky Decl. Ex. 20.) Hanover ultimately paid Becwood and Stonyfield a total of $581,291.62 in settlement of the claim. (Pruzinsky Decl. Ex. 21.) Hanover's payment to Stonyfield reflected a notable deduction for twenty-four (24) bags of Inulin (1,322.76lbs), which upon information and belief were retained by Stonyfield despite the allegations of mold. (Pruzinsky Decl. Ex. 22.) To date, Becwood still has not paid Longhai for the second installment, even though it has been paid by Hanover. Becwood thus took a windfall by failing to pay for the goods while collecting insurance proceeds from its insurer, a fact of which it is believed Hanover was not aware at the time.

## LITIGATION

Longhai filed this action against Becwood on March 18, 2008, seeking to recover $1,415,086.00 for breach of the sales contract with respect to the second, third and fourth shipments, as well as an additional $280,000.00 for, *inter alia*, return shipping costs and misrepresentations made by Becwood. Less than two weeks later, Hanover filed suit in the Southern District of New York, as subrogee of Becwood and assignee of Stonyfield, against Longhai and Evergreen to recover the amounts paid to Becwood and Stonyfield for the first and second shipments. Hanover Ins. Co. v. Dingxi Longhai Dairy Co. Ltd., 08-Civ-3146 (PKL)("the NY action"). Despite the fact that its subrogated claims arose

from the same nucleus of operable facts as Longhai's claims against Becwood, Hanover brought suit in New York on account of a forum-selection clause contained in the Evergreen bills of lading.   Defendant's insurer thereby chose to duplicate litigation instead of intervening in this case and then seeking an appropriate transfer.

On July 1, 2008, this Court issued an order dismissing Longhai's misrepresentation claim, as well as its breach of contract claims for the third and fourth shipments.   (Pruzinsky Decl. Ex. 23.)   The Court specifically found that, "[a]fter receiving the allegedly contaminated goods [in the first and second shipments], Becwood invoked article 73 [of CISG] to avoid the contract on the remaining shipments."   (Id.) The Court further explained that Longhai "acknowledged the avoidance by retaining possession of the [third and fourth] shipments," and later "failed to assert cognizable damages on shipments 3 and 4…."   (Id.)

On October 8, 2008, Longhai filed a Third-Party Complaint against Becwood in the NY action pursuant to Fed. R. Civ. P. 14(c), claiming that if there was any loss or damage to the *first and second* shipments (which Longhai denies), such loss or damage was the responsibility of Becwood (as an FOB purchaser) and/or other parties for whose conduct Longhai could not be liable after delivery of the cargo to the port of Tianjin-Xingang, China.   (Pruzinsky Decl. Ex. 24.)   Longhai thus claimed that it was entitled to full indemnity and/or contribution from Becwood.   (Id.)   Moreover, Longhai contended that Becwood was directly liable to Hanover's assignee and its purchaser, Stonyfield, whose Complaint Becwood was required to answer under Rule 14(c).   (Id.)

8

On January 14, 2009, over six months after this Court issued its July 1 Order—and found that Becwood avoided its sales contract with Longhai—Becwood filed suit against Hanover in this District, claiming that the insurance company wrongfully denied coverage for the recalled *third and fourth* shipments.  Becwood Tech. Group LLC v. Hanover Ins. Group, 09-CV-00070 (JNE/JSM)("the Coverage action").  Becwood has admitted in both Minnesota cases that Hanover paid it for the second shipment (Pruzinsky Decl. Ex. 25 - 26; Am. Answer ¶ 68; Becwood Compl. ¶ 18), which Becwood received, even though payment was never made to Longhai.  However, Becwood neither received nor paid for the third and fourth shipments.  It therefore is evident that Becwood now seeks to recover a windfall judgment against its insurer on the third and fourth shipments after enjoying a windfall on the second shipment.  Furthermore, it does not appear that Becwood designated the Coverage action as a related or associated case when it filed suit.

Becwood then filed an untimely Motion to Dismiss the Third-Party Complaint in the NY action on April 22, 2009 to coincide with a Motion to Compel Depositions that it filed in this case.  Longhai has consistently maintained that the parties to both actions agreed to conduct discovery jointly and that Becwood reneged on an agreement to depose Longhai's witnesses in New York.  Longhai has also argued in this action that compelled depositions would in effect force three Chinese citizens to give duplicative testimony in two foreign locations.  Plaintiff has further alerted both courts to such discovery disputes, as well as the multiple and conflicting interests represented by Becwood's counsel, who also serve as Hanover's counsel in the NY action.

9

In response, Magistrate Judge Nelson opined that, assuming there was no personal jurisdiction impediment, it would be unacceptable to litigate these matters in two separate jurisdictions and conduct duplicative discovery under the same set of operative facts. (Pruzinsky Decl. Ex. 27.)   Accordingly, on April 9, 2009, she issued an order denying Becwood's Motion to Compel Depositions and extending the discovery schedule in this case until Judge Leisure ruled on Becwood's Motion to Dismiss the Third-Party Complaint in the NY action.  (Pruzinsky Decl. Ex. 28.)  After noting that the related cases "could possibly produce conflicting outcomes if they are not consolidated, and unnecessarily costly and duplicative discovery," Magistrate Judge Nelson also ordered Longhai to be "prepared to promptly file a motion to transfer" this case in the event that Becwood's Motion to Dismiss the Third-Party Complaint in the NY action was denied. (Id.)

However, Hanover has recently indicated that it is dismissing its claims against Longhai and Evergreen, and thereby ending the NY action.

[REST OF PAGE INTENTIONALLY LEFT BLANK]

## ARGUMENT

## POINT I

## THE COURT SHOULD RECONSIDER ITS JULY 1 ORDER PURSUANT TO ITS BROAD DISCRETION UNDER Fed. R. Civ. P. 54(b)

### A. Rule 54(b) Reconsideration Standard

Rule 54(b) of the Federal Rules of Civil Procedure states:

> When an action presents more than one claim for relief —
> whether as a claim, counterclaim, crossclaim, or third-party
> claim — or when multiple parties are involved, the court may
> direct entry of a final judgment as to one or more, but fewer
> than all, claims or parties only if the court expressly
> determines that there is no just reason for delay. Otherwise,
> any order or other decision, however designated, that
> adjudicates fewer than all the claims or the rights and
> liabilities of fewer than all the parties does not end the action
> as to any of the claims or parties and may be revised at any
> time before the entry of a judgment adjudicating all the
> claims and all the parties' rights and liabilities.

"The plain meaning of the Rule is that a court retains jurisdiction over all the claims in a suit and may alter any earlier decision at its discretion until final judgment has been issued on a claim or on the case as a whole." Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp., 259 F.Supp.2d 471, 475 (M.D. La. 2002). As explained by the Court of Appeals, "When a district court is convinced that it incorrectly decided a legal question in an interlocutory ruling, the district court may correct the decision to avoid later reversal." Lovett v. Gen. Motors Corp., 975 F.2d 518, 522 (8th Cir. 1992).

In this Circuit, a court has "broad discretion" to reconsider an order granting the dismissal of claims. In re Charter Commc'ns, Inc., 443 F.3d 987, 993 (8th Cir. 2006). However, the exact standard applicable to granting a Rule 54(b) motion is not clear.

11

Rexam Inc. v. United Steel Workers of Am., 03-2998, 2006 WL 2530384, at *6 (D.Minn. Aug. 31, 2006).  Courts have typically held it to be less exacting than the standard for a Rule 59(e) motion, which in turn is less exacting than the standard for Rule 60(b).  Wells' Dairy, Inc. v. Travelers Indem. Co. of Ill., 336 F.Supp.2d 906, 909 (N.D. Iowa 2004); accord Livingston Downs Racing Ass'n, Inc., 259 F.Supp.2d at 475; see also Farr Mann & Co. v. M/V Rozita, 903 F.2d 871, 875 (1st Cir. 1990); Cobell v. Norton, 355 F.Supp.2d 531, 539 (D.D.C. 2005); Persistence Software, Inc. v. Object People, Inc., 200 F.R.D. 626, 627 (N.D. Cal. 2001).  As the Advisory Committee Notes to Rule 60(b) indicate, interlocutory orders are "are not brought within the restrictions of [Rule 60(b)], but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."  See also Schoen v. Washington Post, 246 F.2d 670, 673 (D.C. Cir. 1957)(Burger, J.)(so long as the court has jurisdiction over an action, it should have complete power over interlocutory orders made therein and should be able to revise them when it is 'consonant with equity' to do so).  Still, courts will typically look to the types of consideration under Rules 59 and 60 for guidance. Livingston Downs Racing Ass'n, Inc., 259 F.Supp.2d at 475.  For its part, the Eighth Circuit has noted that a motion to alter or amend judgment under Rule 59 can be properly used to correct manifest errors of law or fact or to present newly discovered evidence. Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir. 1988).

**B. UN Convention on Contracts for the Int'l Sale of Goods**

CISG is the "international analogue" to Article 2 of the Uniform Commercial Code ("UCC").  Chicago Prime Packers, Inc. v. Northam Food Trading Co., 408 F.3d 894, 898 (7th Cir. 2005).  Many of the provisions between the two are the same or similar, and thus case law interpreting analogous provisions of Article 2 may "inform a court where the language of the relevant CISG provision tracks that of the UCC."  Id. (*citing* Delchi Carrier SpA v. Rotorex Corp., 71 F.3d 1024, 1028 (2d Cir. 1995)). Similarly, the International Commercial Terms ("Incoterms") generated by the International Chamber of Commerce, such as FOB ("free on board") and CFR ("cost and freight"), are recognized through their incorporation into CISG under article 9(2).  BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador, 332 F.3d 333, 335 (5th Cir. 2003).

**C. Under the Rule 12(b)(6) Standard, Becwood Was Not Entitled to Avoid its Sales Contract with Longhai**

CISG's "General Provisions" (Chapter I of Part III) provide several basic definitions.  Under article 25, a breach of contract by one party is "fundamental" if:

> [I]t results in such detriment to the other party as substantially to deprive him of what he is entitled to expect under the contract, unless the party in breach did not foresee and a reasonable person of the same kind in the same circumstances would not have foreseen such a result.

Chapter III defines the "Obligations of the Buyer." According to article 58:

> (2) If the contract involves carriage of the goods, the seller may dispatch the goods on terms whereby the goods, or documents controlling their disposition, will not be handed over to the buyer except against payment of the price.

>   (3) The buyer is not bound to pay the price until he has had an opportunity to examine the goods, *unless* the procedures for delivery or payment agreed upon by the parties are inconsistent with his having such an opportunity.

(Emphasis added.)  Chapter IV addresses the "Passing of Risk," and article 67 explains:

>   (1) If the contract of sale involves carriage of the goods and the seller is not bound to hand them over at a particular place, the risk passes to the buyer when the goods are handed over to the first carrier for transmission to the buyer in accordance with the contract of sale.  If the seller is bound to hand over the goods over to a carrier at a particular place, the risk does not pass to the buyer until the goods are handed over to the carrier at that place.  The fact that the seller is authorized to retain documents controlling the disposition of the goods does not affect the passage of the risk.

Finally, Chapter V contains "Provisions Common to the Obligations of the Seller and of the Buyer."  In Section I, article 73 provides:

>   (2) If one party's failure to perform any of his obligations in respect of any installment gives the other party *good grounds* to conclude that a *fundamental breach* of contract will occur with respect to future installments, he may declare the contract avoided for the future, provided that he does so within a reasonable time.

(Emphasis added).

Avoidance under CISG is "the one-sided right of a party to terminate the contract by its mere declaration."  Ulrich Magnus, The Remedy of Avoidance of Contract Under CISG – General Remarks and Special Cases, 25 J.L. & Com. 423 (2006), *available at* http://www.uncitral.org/pdf/english/CISG25/Magnus.pdf.    (Pruzinsky  Decl.  Ex.  29.)

Both courts and scholars have concluded that avoidance under CISG is "a remedy of last resort, or an *ultimo ratio* remedy, which should not be granted easily." Id. at 424.

In considering Becwood's Rule 12(b)(6) motion to dismiss, the Court had to accept as true the well-pleaded allegations of the complaint, *see* Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996), which included Longhai's specific contentions that: (a) the terms of sale were "F.O.B. to Tianjin-Xingang Port, China;" (b) Becwood "failed to fulfill its obligations by fail[ing] to make payments as specified in the purchase order;" and (c) a later lab test report showed that the "product quality was not affected by the water stain and the product quality met and/or exceeded" the purchase order requirements. (Pruzinsky Decl. Ex. 30; Compl. ¶¶ 8, 10.)

### 1. *Becwood Did Not Invoke Article 73*

Under article 26 of CISG, a party who is entitled to terminate a contract must give notice of the avoidance. Magnus, *supra*, at 426. While this "strict" requirement does not necessitate the use of the words "avoidance," a party must make "unambiguously clear that the contract is to be terminated." Id. at 427. In the July 1 Order, the Court held that "[a]fter receiving the allegedly contaminated goods [in the first and second shipments], Becwood invoked article 73[(2)] to avoid the contract on the remaining shipments." Yet, the Court did not have before it any basis for making, and did not make, a determination that Becwood: (a) had "good grounds to conclude that a fundamental breach of contract" would occur after the goods were delivered on FOB terms; and (b) expressly notified

Longhai of its avoidance.   The Court further held that Longhai "acknowledged" Becwood's avoidance by retaining possession of the third and fourth shipments.

However, Becwood neither invoked article 73 nor made any sort of declaration pursuant to article 26.  Instead, it refused to pay for and accept conforming goods that had already been delivered to it per the terms of its purchase order.  Thus, there was no avoidance whatsoever, but rather a breach of contract by Becwood and a subsequent recall by Longhai to mitigate its losses.   In fact, Becwood explicitly stated in its supporting Memorandum of Law:

> [E]ven assuming that Becwood breached the contract with respect to shipment installment 2 by refusing to pay for it…Dingxi cannot possibly recover from Becwood as damages the full contract price for shipment installments 3 and 4 because *Dingxi* concedes that it recalled them back to its possession and thus *avoided* the Sales Contract as to these installments.

(Pruzinsky Decl. Ex. 31; Def.'s May 13, 2008 Mem. 7)(emphasis added).  It should go without saying that if Becwood claims Longhai avoided the contract by recall, then it could not have unambiguously notified Longhai of its own avoidance.  Moreover, CISG does not contain any article whatsoever on the "acknowledgment" of a purported avoidance, let alone one by recall of a delivered shipment of conforming goods after the risk of loss has passed to the buyer.

### 2. *Becwood Has Not Established Nonconformity of the Goods*

Taking Longhai's contentions as true, it cannot be said that Becwood received "allegedly contaminated" goods from Longhai.   First, the source of the so-called

16

"condensation issues" with the first and second shipments remains unknown to this day—a fact which explains why Becwood's subrogated insurer filed suit against the ocean carrier in the NY action.  Second, Defendant has failed to retain or produce test results or samples from the alleged mold, as well as the packaging on which it was supposedly found.  Third, there is no indication that the third and fourth shipments suffered from the same condition.  Fourth, as alleged in the Complaint, further testing revealed that the goods were conforming.

Thus, Becwood was not entitled to invoke article 73 to avoid the contract since Becwood did not have "good grounds" to do so under a Rule 12(b)(6) standard.  Since the Court was required to assume that Longhai delivered the Inulin in good order and condition to FOB port of Tianjin-Xingang, China, it also had to assume that Becwood was solely responsible for making sure that the cargo was properly shipped and ultimately delivered to its customer, Stonyfield, who was not a party to the contract.  Insofar as the sale was FOB, the risk of loss passed to Becwood once Longhai fulfilled its delivery obligations at the port, and any assistance rendered by Longhai was done so at the buyer's risk and expense.  *See* Jan Ramberg, Int'l Chamber of Commerce, ICC Guide to Incoterms 2000 99, 102 §§ A5, B3 (1999); *see also* Bellisio Foods, Inc. v. Prodo Pak Corp., 07-CV-4520, 2008 WL 4867352, at *7 n.9 (D. Minn. Nov. 4, 2008)(same result with FOB shipment contracts under the Uniform Commercial Code).  Accordingly, Longhai did not fail to perform any of its obligations under the sales contract, which is a prerequisite to avoidance under article 73(2).  Becwood, however, was in clear breach of its contract with Longhai.

17

The case of <u>Chicago Prime Packers</u> is illustrative of the defendant-buyer's burden of proving nonconformity as an affirmative defense to a breach of contract claim by the plaintiff-seller under CISG.  320 F.Supp.2d 702, *aff'd* 408 F.3d 894 (7th Cir. 2005). There, the parties (two meat wholesalers) entered into a contract for the sale of pork loin ribs.  The plaintiff delivered the ribs to a trucking company hired by defendant, who signed a bill lading and acknowledged that the goods were "in apparent good order," even though their contents and condition were "unknown."  408 F.3d at 896.  Under the terms of the contract, payment was due by a certain date.  An employee or agent of the defendant later testified that, on that date, it had "no basis for withholding payment."  <u>Id.</u> Several days later, however, the defendant's customer discovered the meat in "off condition" and the shipment was subsequently condemned.  Thereafter, the defendant argued that the ribs were spoiled at the time of transfer to the trucking company and that, as a result, it was relived of "its duty to pay under the contract."  <u>Id.</u> at 897.  The district court disagreed, however, and ruled that the defendant-buyer failed to carry its burden in proving nonconformity of the goods.  320 F.Supp.2d 702, 710.  The Seventh Circuit affirmed, analogizing CISG to the UCC:

> [J]ust as a buyer-defendant bears the burden of proving breach of the implied warranty of fitness for ordinary purpose [as an affirmative defense] under the UCC, under the CISG, the buyer-defendant bears the burden of proving nonconformity at the time of transfer.

408 F.3d at 898.  The Court of Appeals then found that the defendant "offered no credited evidence showing that the ribs were spoiled at the time of transfer or excluding the

possibility that the ribs became spoiled after the transfer." Thus, the defendant-buyer was liable to for its non-payment and breach of the sales contract.

### 3. *Becwood Was Not Entitled to Release of the Third Shipment Without Payment*

Additionally, Becwood was not entitled to receipt of the third shipment at the port of New York, pursuant to article 58 and the explicit payment terms of the purchase order. As Becwood's president himself recognized, the risk that damage would not be known "until after payment" and arrival of the goods was a risk that Defendant chose to bear. (Pruzinsky Decl. Ex. 5.) The fact that Longhai was entitled to retain "documents controlling the disposition of the goods" did not affect the passage of such risk under article 67. *See* St. Paul Guardian Ins. Co. v. Neuromed Med. Sys. & Support, GmbH, 00-CV-9344, 2002 WL 465312, at *4-5 (S.D.N.Y. Mar. 26, 2002)(the passage of risk under CISG is independent of the transfer of title). Thus, if a refusal by Longhai to release the third and fourth shipments without payment under the terms of the purchase order did not "substantially deprive" Becwood of what it was "entitled to expect under the contract," as those terms are used in article 25, then Defendant had no grounds to conclude that a "fundamental" breach would occur, let alone good grounds.

Instead, Becwood breached its contract with Longhai in an attempt to improperly hedge against Stonyfield's refusal to accept the Inulin. For Becwood's president worried that his customer would "just run from the problem even though they have responsibility in this transaction as well." (Pruzinsky Decl. Ex. 14.) To reiterate, however, Stonyfield

was not a party to the contract between Plaintiff and Defendant, and payment by Becwood's customer was not a precondition to Becwood's performance.

Consequently, article 76 cannot govern the recovery of damages since no avoidance by Becwood occurred and Longhai's mere breach of contract claims for the third and fourth shipments under article 74 were improperly dismissed. Plaintiff therefore requests the Court to exercise its "broad discretion" and reconsider its July 1 Order. *See* In re Charter Commc'ns, Inc., 443 F.3d at 993. While the standard applicable to a Rule 54(b) motion may not be entirely clear, *see* Rexam Inc., 2006 WL 2530384 at *6, the ruling on the pleadings that Becwood avoided the sales contract pursuant to article 73(2) was manifestly in error of law and/or fact, such that reconsideration even under Fed. R. Civ. P. 59 would be appropriate under the circumstances. *See* Hagerman, 839 F.2d at 414. Defendant clearly failed to carry its Rule 12(b)(6) burden since dismissal is *only* appropriate if it appears "beyond a doubt" that the plaintiff failed to allege facts that would entitle him to relief. Hafley, 90 F.3d at 266.


**D. Return Shipping and Related Costs are Recoverable under Article 76**

Moreover, the Court was required to make an additional inquiry under article 76 to determine whether Longhai could show damages under article 74. In its relevant portion (as quoted by the Court in its July 1 Order), article 76(1) states:

> If the contract is avoided and there is a current price for the goods, the party claiming damages may, if he has not made a purchase or resale under article 75, recover the difference between the price fixed by the contract and the current price

20

> at the time of avoidance *as well as any further damages recoverable under article 74.*

(Emphasis added.)  Article 74 additionally provides (in its entirety):

> Damages for breach of contract by one party consist of a sum equal to the loss, including loss of profit, suffered by the other party as a consequence of the breach.  Such damages may not exceed the loss which the party in breach foresaw or ought to have foreseen at the time of the conclusion of the contract, in the light of the facts and matters of which he then knew or ought to have known, as a possible consequence of the breach of contract.

In the July 1 Order, the Court held that Longhai's "recovery is governed by CISG article 76 – not article 74 – and is limited to the difference between the current price of the goods and the price fixed by its contract with Becwood."  (Pruzinsky Decl. Ex. 23; July 1 Order 4.)  However, the Court did not address article 76's explicit reference to and incorporation of article 74.  While article 76 may limit primary recovery to the difference between contract price and the current price at the time of avoidance, it does not explicitly or implicitly preclude additional recovery under article 74 if such a difference proves to be nil or a plaintiff cannot establish the price of the goods at the time of avoidance.  Article 74 is "designed to place the aggrieved party in as good a position as if the other party had properly performed the contract."  <u>Delchi Carrier SpA</u>, 71 F.3d at 1029.  Reasonably foreseeable expenses for "shipping, customs, and related matters" stemming from "returned shipments" are thus recoverable under this provision as legitimate consequential damages.  <u>Id.</u> at 1030.  They are likewise recoverable by a seller as incidental damages under the UCC:

> Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach.

Minn. Stat. § 336.2-710 (2008).

For its part, Plaintiff underscored the full text of article 76 in its Memorandum of Law opposing Becwood's Motion to Dismiss. (Pruzinsky Decl. Ex. 32; Pl.'s June 6, 2008 Mem. 4.)  Longhai also alleged in its complaint that it was compelled by Becwood's breach to recall the third and fourth shipments, thereby sustaining recoverable damages for "actual shipping costs, including delivery, merchant transportation, land transportation, unpacking, labor, storage and etc., in the sum of Two Hundred and Eighty Thousand U.S. Dollars ($280,000.00)."  (Pruzinsky Decl. Ex. 31; Compl. ¶ 16.) Becwood likewise recognized that the phrase "any further damages recoverable under article 74" in article 76 means "any additional <u>consequential</u> damages resulting from the breach that were reasonably foreseeable…."  (Pruzinsky Decl. Ex. 33; Def.'s June 13, 2008 Reply Mem. 5.)

It is furthermore evident that Becwood ought to have foreseen that such shipping and related costs were possible consequences of its breach inasmuch as Becwood entered into two separate agreements—one with Stonyfield and one with Longhai—without conditioning either agreement on the performance of the other.  As Becwood's president recognized, "The bigger problem is [Stonyfield] agreed to pre pay these shipments so everyone gets paid, if they back out it leaves us with the problem of what to do with all of

22

this product." (Pruzinsky Decl. Ex. 14.) And since Becwood knew that it was purchasing imported Inulin directly from a Chinese manufacturer, it assuredly ought to have known at the time of contract that any failure to prepay for goods already in transit—according to its own purchase order terms—would have resulted in substantial return shipping costs and other related fees.

Accordingly, Plaintiff has alleged facts which, when taken as true, at the *very least* prevent Defendant from establishing "beyond a doubt" that Longhai is not entitled to relief for breach of contract by Becwood on the third and fourth shipments. *See* Hafley, 90 F.3d at 266. Plaintiff therefore requests the Court to review its article 76 analysis in the July 1 Order. If Court declines to reconsider its application of article 76 altogether, Plaintiff asserts in the alternative that the full text of the article compels reinstatement of claims for the third and fourth shipments to the extent that Becwood ought to have foreseen shipping and related costs for the return of the Inulin to China.

### E. Newly Discovered and Previously Unavailable Evidence Demonstrates Resale of the Returned Inulin

In the further alternative, and again under the Court's broad discretion, Plaintiff asserts that it is wholly appropriate to reconsider the July 1 Order based on newly discovered evidence. *See* Hagerman, 839 F.2d at 414. For discovery, which gained momentum in this case and the NY action despite Defendant's efforts to frustrate its efficient administration through misrepresentations and motion practice, has uncovered documentation in China which shows that the recalled Inulin was subject to resale. Thus, even if the Court were to decline reconsideration of its article 73(2) analysis, Plaintiff's

23

claims should still be reinstated as consistent with the Court's recognition of an avoidance by Becwood.

Article 76 of CISG allows a seller to "recover the difference between the price fixed by the contract and the current price at the time of avoidance." However, this measure of damages is inapplicable by its own terms where the seller has made a "resale under article 75."[2] Both articles also allow a claimant to recover "further damages" available under article 74.

In April 2009, Delin Qu, counsel for Longhai, visited Plaintiff's facilities in Gansu Province, China. (Qu Decl. ¶ 2.) There, Mr. Qu was able to locate and identify numerous documents relating to Longhai's relationship with Encore Technologies LLC, the name under which Becwood conducted business prior to July 2006. Mr. Qu was also able to confirm during the course of his investigation that Inulin comprising the last two shipments was actually resold piecemeal to various Chinese purchasers over the course of thirteen months—from September 2007 to October 2008. (Qu Decl. ¶ 6.) Out of 396MT, between 196MT and 230MT were not resold until after Longhai had commenced this action, and between 36MT and 100MT were not resold until after Becwood moved to dismiss.[3] (Qu Decl. ¶ 7.)

---

[2] Plaintiff is mindful of the fact that it prematurely maintained in its Memorandum of Law opposing Becwood's Motion to Dismiss that third and fourth shipments were not resold. However, as further discussed below, counsel could not have corrected this factual misunderstanding or confirmed Longhai's resale through due diligence before suit was filed.

[3] 34 metric tons were resold in March 2008, although it is unclear whether resale occurred before or after Longhai filed suit on the 18th. Likewise, 64 metric tons were resold in May 2008, either before or after Becwood filed its Motion to Dismiss.

It is evident that Plaintiff could not have presented resale evidence to the Court with respect to the 36MT – 100MT of Inulin sold *after* Becwood filed its Rule 12(b)(6) motion.   Moreover, with respect to the remaining amounts, Plaintiff could not have presented evidence of resale earlier, through the exercise of due diligence, for several reasons.   First, the returned Inulin was removed from the labeled packaging requested by Becwood, thereby making identification particularly difficult.   (Qu Decl. ¶ 5.)   Second, without a primary buyer in bulk, the repackaged Inulin was then resold piecemeal to domestic buyers in 15 separate transactions conducted mainly by telephone, further complicating identification and tracking.   (Qu Decl. ¶ 6.)   Third, Plaintiff is a manufacturer in the hinterland province of Gansu, China—a fact which has, along with cultural and language difference, lengthened discovery, hampered document location, and complicated communication between Longhai and its U.S. counsel.   Without remote access to Longhai's files and records, co-counsel had to personally travel to China in order to conduct the research necessary to confirm the extended resale of Inulin from the third and fourth shipments.   (Qu Decl. ¶ 8.)

Thus, given the Court's "broad discretion" to reconsider a dismissal of claims, *see* In re Charter Commc'ns, Inc., 443 F.3d at 993, and the circumstances surrounding this case (including the difficulties in identifying repackaged, fungible goods in hinterland China and the resale which occurred *after* May 2008), it is wholly appropriate and "consonant with equity" for the Court to revisit the July 1 Order.   *See* Schoen, 246 F.2d at 673.

<u>**POINT II**</u>

**THE COURT SHOULD DENY BECWOOD'S MOTION
FOR ENTRY OF FINAL JUDGMENT**

**A. Rule 54(b) Certification Standard**

According to the U.S. Supreme Court, the role of the district court under Rule 54(b) is "to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal." <u>Little Earth of United Tribes, Inc. v. U.S. Dep't of HUD</u>, 738 F.2d 310, 313 (8th Cir. 1984)(*citing* <u>Curtiss-Wright v. Gen. Elec. Co.</u>, 446 U.S. 1, 8 (1980)). "Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." <u>Id.</u> In deciding whether to grant a motion for entry of final judgment, a district court must take into account judicial administrative interests as well as the equities involved. <u>Id.</u> Such administrative interests include: (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; and (5) miscellaneous factors such as delay, economic considerations, and expenses. <u>Hayden v. McDonald</u>, 719 F.2d 266, 269 (8th Cir. 1983). Depending on the particular facts of the case, all or some of these factors may bear upon the "propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b)." <u>Id.</u>

Yet, the "principal judicial concern is 'to prevent piecemeal appeals in cases which should be reviewed only as single units.'" <u>Little Earth of United Tribes</u>, 738 F.2d at 313 (*citing* <u>Curtiss-Wright</u>, 446 U.S. at 10). The Eighth Circuit has thus made clear that Rule 54(b) orders "should not be entered routinely or as an accommodation to counsel." <u>Burlington N. R.R. Co. v. Bair</u>, 754 F.2d 799, 800 (8th Cir. 1985). While Rule 54(b) was enacted "to avoid the possible injustice that might result if judgment of a distinctly separate claim were delayed until adjudication of the entire case," it does not "purport to amend or dilute the fundamental rule against splitting a cause of action and deciding appellate cases in piecemeal fashion." <u>Page v. Preisser</u>, 585 F.2d 336, 339 (8th Cir. 1978)(citations omitted). In fact, the "policy of all courts is to avoid piecemeal and interlocutory appeals." <u>Burlington N. R.R. Co.</u>, 754 F.2d at 800. Thus, "both courts and commentators have expressed the exceptional nature of a Rule 54(b) certification." <u>Page</u>, 585 F.2d at 339. It therefore is incumbent upon a movant to demonstrate "clear injustice or hardship resulting from delaying a final judgment on a particular question" in order to justify certification in light of the "economic preference for all claims in a particular case to move to the appeal stage together." *See* <u>Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.</u>, 930 F.Supp. 1317, 1327 (D. Minn. 1996).

## B. Becwood's Res Judicata Argument Has Been Rendered Moot and Entry Final Judgment Would Be Improper in Any Event

As indicated above, Hanover is dismissing its subrogated claims against Longhai and Evergreen in the NY action. Becwood's motion must accordingly fail since Defendant's entire argument is based upon the alleged rectitude and utility of res judicata

27

as a means of preventing Longhai from "relitigating" the dismissed claims via its Third-Party Complaint in the Southern District of New York.  Stripped of its claim preclusion entreaty, Becwood's supporting Memorandum of Law contains nothing more than brief, conclusory statements about judicial administrative interests, which are wholly incapable of justifying the exception to the "fundamental rule against splitting a cause of action and deciding appellate cases in piecemeal fashion." Page, 585 F.2d at 339.  As specifically recognized by the Eighth Circuit, Rule 54(b) orders should not be "entered routinely," Burlington N. R.R. Co., 754 F.2d at 800, and the circumstances of this case no longer present grounds on which certification could arguably be based.  Here, it also bears noting that the *third and fourth* shipments were not even at issue in the NY action and therefore Becwood's argument would have failed anyway.

### C. Res Judicata is Not a Primary Concern and Otherwise Weighs in Favor of Longhai's Opposition

Becwood contends in its Memorandum of Law that this Court has previously held res judicata to be the "primary equity" under consideration in a Rule 54(b) motion, citing to Nw. Airlines, Inc., 930 F.Supp. at 1323, 1327, and that "this effect trumps all other considerations under the second prong of the *Curtiss-Wright* test."  The Court, however, made no such declaration in Nw. Airlines, and no other case cited by Becwood even hints that res judicata "trumps" all other concerns.  On the contrary, the Nw. Airlines court stated: "At least three Circuits have noted that a court may consider res judicata effects of a Rule 54(b) certification, but such consideration *must occur* in conjunction with other factors." Id. at 1323. (emphasis added).  In support, the court cited the same three cases

28

as Becwood.[4]  It then decided: "Following these precedents, this Court will determine the res judicata effect of the order requested by [Plaintiff] *in conjunction with* the traditional principles applied by courts to Rule 54(b) motions."  Id. (emphasis added).

The Nw. Airlines court ultimately concluded that the "particular circumstances" of the case warranted entry of final judgment, as the res judiciata effect would "prevent the unseemly 'end around' attempted by [the defendant]."[5]  930 F.Supp. at 1327.  There, the defendant attempted to secure the priority of a state-court trial date over a federal one (through calculated motion practice) after it had participated in a summary judgment proceeding in federal court and lost.  Id. at n.8.  Similarly, in Cont'l Airlines, the plaintiff filed suit in federal and state court and later lost on a summary judgment motion, which the District Court for the Central District of California certified under Rule 54(b).  819 F.2d at 1522.  The Ninth Circuit ultimately held that an "*otherwise permissible* 54(b) certification designed to produce res judicata effects in another forum was proper under the circumstances."  Id. at 1525 (emphasis added).  However, it cautioned: "We do not wish to encourage the districts courts to use their 54(b) powers to promote a race to judgment or to 'snatch from the state courts' a dispute properly litigated there."  Id.

Here, only Becwood has attempted to perpetrate an "end around" by filing suit against its insurer, Hanover, for coverage on the *third and fourth* shipments, over six months after this Court's July 1 Order dismissed Longhai's corresponding claims.  It is

---

[4] Shamley v. ITT Corp., 869 F.2d 167 (2d Cir. 1989); Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co., 819 F.2d 1519 (9th Cir. 1987); Bank of Lincolnwood v. Fed. Leasing, Inc., 622 F.2d 944 (7th Cir. 1980)

[5] The court also noted that "under normal circumstances" it would not have certified the memorandum opinion and order.  930 F.Supp. at 1327

undisputed that Becwood never paid Longhai for the third and fourth shipments and never received the Inulin contained therein.  It is apparent, then, that Becwood now seeks an entry of final judgment to prevent the Court from revisiting its July 1 Order and to thereby facilitate its pursuit of a windfall judgment against Hanover in the Coverage action, which Becwood suspiciously failed to designate as a related case.  The veiled purpose of Becwood's ploy is not to conserve judicial resources, but rather to effectively preclude Longhai from intervening in the Coverage action to prevent Becwood from receiving payment for the third and fourth shipments.  Thus, under the circumstances of this case, the possible application of res judicata—or rather the impropriety of the principle's application—actually weighs in favor of Longhai's opposition, as well as its Motion for Reconsideration.

### D. Becwood Has Not Demonstrated Clear Injustice or Hardship Resulting from Delay

As the movant, Becwood has failed to meet its burden of demonstrating "clear injustice or hardship resulting from delaying a final judgment on a particular question." *See* Nw. Airlines, Inc., 930 F.Supp. at 1327.  Apart from arguing in a wholly conclusory fashion as part of its res judicata argument that Longhai's "relitigation" would "impose undue hardship on Becwood through additional costs and attorney's fees,"  Becwood has failed, in fact, to make any showing of injustice or hardship whatsoever.  As indicated earlier, The NY action will soon be dismissed by Hanover and therefore Becwood's res judicata argument has been rendered moot.  It is furthermore disingenuous for a company

which describes itself as a "major supplier" of Inulin and "leader in the industry" to argue that it would suffer "undue hardship" if compelled to litigate in New York under an enforceable forum-selection clause.  (Pruzinsky Decl. Ex. 34.)   As courts have recently emphasized, a "forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel."  Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 10 (2d Cir. 1995)(citations omitted).  "Moreover, we are concerned here with a forum of contract, not of convenience."  Id.

It also bears noting that this rehashed argument about relitigating claims in New York was soundly rejected by Magistrate Judge Nelson at the April 3, 2009 hearing on Becwood's Motion to Compel Depositions:

> **MR. PRUZINSKY [counsel for Longhai]:** You can't relitigate something that's –
>
> **THE COURT:** No.
>
> **MR. PRUZINSKY:** – already been dismissed.
>
> **THE COURT:** Whether it's here or in front of Judge Leisure [in the Southern District of New York].
>
> **MR. PRUZINSKY:** Exactly.  And that was my point….
>
> ….
>
> **MR. LIEN [counsel for Becwood]:** Becwood is a Minnesota company.  We've been proceeding as such in Minnesota. Judge Doty made his ruling and, subsequently, they've expressed this intent.  And basically what the intent is is somehow I think once they get it to New York, the judge will be more willing to overturn another –

31

**THE COURT:** He won't even have that option as far as I'm concerned. I'd be shocked if he did that because, first of all, these folks [i.e., Longhai] have to ask for the ability to even challenge it. And I've never honestly seen a case where a lateral district court judge has reconsidered the decision of another.

….

**MR. LIEN:** And all I would say, Your Honor, is that Becwood, you know, the case was started here in Minnesota. Judge Doty has made his rulings, and any intent to transfer the case to New York to relitigate that, that can't constitute good cause. And that's—and that's what we have a major concern with, especially the potential for prejudice to Becwood if the case is transferred and –

**THE COURT:** But the only potential prejudice that you've articulated is this idea that Judge Leisure would somehow overrule Judge Doty. I mean, do you have some authority where a parallel federal judge has done that in a transferred case?

**MR. LIEN:** I haven't seen it, Your Honor….

(Pruzinsky Decl. Ex. 27; Hr'g Tr. 12, 17-18, 20-21.) Since the circumstances have never presented a chance for Longhai to "relitigate" its claims, as feared by Becwood, and since they would otherwise foreclose the possibility under Becwood's line of reasoning given the pending dismissal of the NY action, Defendant has failed to demonstrate any injustice or hardship required for its Motion to succeed.

**E.  Judicial Administrative Interests Do Not Favor Certification**

1.  *The Relationship Between the Adjudicated and Unadjudicated Claims*

As Becwood recognizes in its Memorandum of Law, "the 'judicial administrative interests' contemplated by Rule 54(b) and the Supreme Court in Curtiss-Wright are primarily those of the appellate courts."  Nw. Airlines, Inc., 930 F.Supp. at 1326; ( Def.'s June 2, 2009 Mem. 11).   Yet, the court in Nw. Airlines followed this remark by acknowledging that the scope of a district court's jurisdiction requires it to "shun piecemeal and interlocutory appeals," and that the Eighth Circuit "strongly disfavors piecemeal appeals."  Id. (*citing* U.S. Fire Ins. Co. v. Smith Barney, Harris Upham & Co., 724 F.2d 650, 652 (8th Cir. 1983); Interstate Power Co. v. Kan. City Power & Light Co., 992 F.2d 804, 807 (8th Cir. 1993)).

Thus, even where the dismissed and surviving claims both arise out of the same contractual relationship but the "'nucleus of operative fact' varies to some degree from claim to claim," the first factor weighs against the entry of judgment on account of the fundamental "distaste for piecemeal review."  Nw. Airlines, Inc., 930 F.Supp. at 1326.  In other words, "Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims."  Little Earth of United Tribes, Inc., 738 F.2d at 313 (*citing* Curtiss-Wright, 446 U.S. at 8); *see also* Transclean Corp. v. Bill Clark Oil Co., 02-1138, 2004 WL 2730101 at *4. (D. Minn. Nov. 18, 2004).

Here, it cannot be disputed that Longhai's claims for the second, third and fourth shipments arise out of the same contractual relationship or under the same purchase order

issued by Becwood.  Moreover, it is irrelevant if the "nucleus of operative fact" varies to some minor degree on account of Defendant's failure to take delivery of the last two shipments.  In short, the distaste for piecemeal review cuts against Becwood's argument for entry of judgment at this time, especially where Defendant cannot otherwise demonstrate that clear injustice or undue hardship would result from a delay of certification until the entire case has been adjudicated.

2. *The Possibility that the Need for Review Might or Might not be Mooted by Future Developments in the District Court*

The second factor speaks mainly to future developments in the district court which might render moot the need for immediate appellate review as desired by the movant. Unlike the typical Rule 54(b) motion scenario where the movant wishes to speed up its trek to the Court of Appeals, Becwood only wishes here to covertly create res judicata effects in a related yet unconsolidated case in this District.  As the NY action is being dismissed, and as Longhai has cross-moved for reconsideration, the second factor weighs against certification under the circumstances of the case.  For reconsideration of the July 1 Order, instead of certification, would moot the need for making appellate review available.

3. *The Possibility that the Reviewing Court Might be Obliged to Consider the Same Issue a Second Time*

Contrary to Becwood's position, which gives little credit to the Court of Appeals for enumerating various concerns in <u>Hayden</u>, 719 F.2d at 269, the third factor is not "just a reformulation of the first factor."  (Def.'s June 2, 2009 Mem. 12.)  As the court in <u>Nw.</u>

34

Airlines recognized, certification may cause the Eighth Circuit to consider this case twice: on appeal from the July 1 Order, and on appeal after trial.  930 F.Supp. at 1326. Yet, unlike the Nw. Airlines case, neither of these appeals can be mooted by developments in a separate case since Hanover dismissed its claims in the NY action. Apparently, Defendant also fails to appreciate that certification would enable Longhai to file a Rule 59 or 60 motion, or an immediate appeal, and thereby seek reversal of the July 1 Order by alternative means.  Given the distaste for piecemeal appeals, however, this factor also weighs against certification, as well as in favor of Rule 54(b) reconsideration by the Court under the circumstances.

    4.  *Miscellaneous Factors such as Delay, Economic Considerations and Expenses*

Becwood again glosses over enumerated concerns by alleging in conclusory fashion that "none of the miscellaneous factors carry much weight one way or the other." While arguably the issue of expenses and economic considerations for the non-movant may be more of a concern in the typical Rule 54(b) motion scenario (i.e., where the movant seeks immediate appellate review), here the factor still weighs in Longhai's favor.  For if the Court declines even to consider Longhai's cross-motion for reconsideration and instead grants Becwood's motion for entry of final judgment, Plaintiff will be entitled as a matter of right to either: (a) move for reconsideration under Rule 59 or 60; or (b) file an appeal with the Eighth Circuit.  In either case, both parties would incur additional expenses by supporting and opposing their respective positions.

Thus, the miscellaneous factors cut against Becwood's argument and support a denial of its motion.

## <u>CONCLUSION</u>

For the foregoing reasons, Longhai respectfully requests the Court to: (a) grant Plaintiff's Cross-Motion for Reconsideration in the exercise of its broad discretion; and (b) deny Becwood's Motion for Entry of Final Judgment.  On one hand, Defendant's res judicata argument carries no weight in light of Hanover's dismissal of the NY action. Claim preclusion at this point could only be used by Becwood in the related Coverage action to improperly seek a windfall judgment against its insurer.  On the other hand, Plaintiff has demonstrated that: (a) Becwood was not entitled to avoid its contract with Longhai under CISG where the well-pleaded allegations of its Complaint are taken as true; (b) return shipping and related expenses are recoverable as damages under article 76; and (c) newly discovered evidence necessitates a reconsideration of the July 1 Order.

Dated: New York, New York
     June 24, 2009

<u>**s/ Anthony J. Pruzinsky**</u>
Anthony J. Pruzinsky
NY No. AP8534
Hill Rivkins & Hayden LLP
45 Broadway, Suite 1500
New York, NY 10006
Tel: (212) 669-0600
Fax: (212) 669-0699

Delin Qu
MN No. 024369
Law Offices of Delin Qu
821 Raymond Ave., Suite 240
St. Paul, MN 55114
(651) 494-0300

**Attorneys for Plaintiff,**
**Dingxi Longhai Dairy, Ltd.**